UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CASE NO. 6:21-CV-00386** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **CITI APPROVED ENTERPRISE L L C** | **MAGISTRATE JUDGE PATRICK J. HANNA** |

REPORT AND RECOMMENDATION

Before this Court is a motion to compel arbitration or, alternatively to dismiss or stay filed by defendant Citi Approved Enterprise, LLC ("Citi"). (Rec. Doc. 6). The undersigned issues the following report and recommendation pursuant to 28 U.S.C. § 636, recommending Citi's motion to compel arbitration be GRANTED in part and DENIED in part; recommending Citi's motion to dismiss be DENIED; and recommending all Miller Act claims be stayed pending arbitration of all other claims.

### Relevant Facts

Plaintiff Pontchartrain Partners LLC ("PPLLC") is a subcontractor to Citi on a U.S. Army Corps of Engineers ("USACE") project entitled the Atchafalaya Basin Floodway Bayou Boeuf Lock 2018 South Chamber Guidewall Replacement ("Project"). Citi entered into the prime contract with USACE in September of 2018 and the subcontract with PPLLC in December of 2018. (Rec. Doc. 1-2).

1

PPLLC filed the instant suit in February of 2021, asserting a variety of breach of contract and damage claims against Citi. Specifically, PPLLC alleges damages in the form of unpaid labor and material costs stemming from delays caused by Citi amounting to $527,000.00 and unpaid progress payments due under the subcontract in the amount of $221,815.94. Finally, PPLLC asserts Citi terminated the subcontract prematurely and without cause resulting in a loss to PPLLC of approximately $4,000,000.00. (Rec. Doc. 1).

Citi's responsive motion argues that the arbitration clause found within the subcontract applies to all claims asserted by PPLLC and, for that reason, PPLLC's claims should be referred to arbitration and its suit dismissed. Citi also argues that PPLLC fails to state Miller Act claims in its complaint, further justifying dismissal. PPLLC opposes Citi's motion and the issues are now fully briefed before the Court.

## Analysis

The Federal Arbitration Act[1] ("FAA") was enacted in 1925 to prevent court bias against enforcement of arbitration agreements. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 270 (1995). The FAA embodies a liberal policy toward arbitration and requires the enforcement of arbitration agreements according to their terms. 9 U.S.C. § 2; *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985).

---

[1] 9 U.S.C. § 1, *et seq.*

A party "aggrieved" by the failure of another to engage willingly in arbitration under the terms of the arbitration agreement may file suit to enforce the contractual provision. 9 U.S.C. § 4.

A court presented with a motion to compel arbitration must conduct a two-part analysis, asking: (1) whether a valid arbitration agreement exists among the parties, and (2) whether the dispute at issue falls within the scope of the arbitration agreement. *Sherer v. Green Tree Servicing, LLC*, 548 F.3d 379, 381 (5th Cir. 2008). "The duty to arbitrate is one of contract; a court cannot compel parties to arbitrate issues they have not agreed to submit to arbitration." *Tittle v. Enron Corp.*, 463 F.3d 410, 418 (5th Cir. 2006); *Will-Drill Res, Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003).

Section XXXVIII of the subcontract executed between PPLLC and Citi, entitled "Arbitration[,]" provides, in part:

> any controversy or Claim arising out of or relating to this contract or contract warranty or the breach thereof which cannot be resolved by mediations shall be settled by arbitration… (Rec. Doc. 1-2 at p. 17).

Citi asserts that all claims by PPLLC are referrable to arbitration and, as such, this Court must so refer PPLLC's Miller Act claims and dismiss this suit or, at a minimum, stay the suit pending arbitration of all claims. (Rec. Doc. 6). Specifically, Citi cites *Portland Const. Co. v. Weiss Pollution Control Corp.*, 532 F.2d 1009, 1012 (5th Cir. 1976) for the maxim that the FAA applies to Miller Act claims. In the

Court's view the pertinent language reads, "[t]here is no inconsistency between arbitration and a subsequent suit on the Miller Act bond." Id. at 1012. Indeed, this case presents just such a condition.

The Miller Act provides a federal right of action against a surety issuing a bond to a general contractor on a government construction project. A subcontractor who supplies labor and materials to a federal construction project may file a Miller Act claim against the surety for recovery of payments owed by the general contractor. 40 U.S.C. § 3131. Although these rights may be waived by contract, a party's intent to do so must be in writing and expressly stated. *JS&H Const. Co. v. Richmond County Hosp. Auth.*, 473 F.2d 212, 216 (5th Cir. 1973) (citing *H.W. Caldwell & Son, Inc. v. U.S. for Use and Benefit of John H. Moon & Sons, Inc.*, 407 F.2d 21 (1969)).

Miller Act claims by a subcontractor for unpaid labor and materials are separate and distinct from those for general breach of contract, although a general contractor's liability for breach of contract may govern the extent of liability for Miller Act claims. *U.S. ex rel. Patton Contractors, Inc. v. Innovative Performance Contracting, Inc.*, 2014 WL 4798449 (N.D. Tex. 2014) (collecting cases). As noted by the Fifth Circuit in *Portland Const. Co.*, these two separate classes of claims may be pursued in different avenues and the two mechanisms, arbitration and Miller Act suits, are not, *per se*, inconsistent with one another.

In this case, we find that a valid arbitration agreement exists between the parties. Indeed PPLLC does not argue otherwise. We also find that PPLLC's breach of contract claims fall within the scope of the arbitration agreement, as such claims are contemplated by the clear language of the agreement: "…Claim arising out of…this contract…or the breach thereof…" (Rec. Doc. 1-2 at p. 17). We reach a different conclusion regarding PPLLC's Miller Act claims, as such claims are actually claims against the surety as the issuer of the bond and not against the subcontractor itself and, as such, are not subject to the arbitration agreement. As is true with all contracts as cited above, courts will not – absent express intent – impute the constraints of an arbitration agreement to (1) a non-party, and (2) a statutory provision requiring express waiver. *U.S. for the Benefit and Use of F&W Contractors, Inc v. Terra Construction, et al.*, 2017 WL 10841489 (W.D. Tex. 2017).

Here, PPLLC's Miller Act claims are closely related to its breach of contract claims, making a stay of all Miller Act claims pending arbitration proper. *U.S. ex rel. Peake Const., LLC v. Crown Roofing Services, Inc.*, 2010 WL 1416673 *3 (E.D. La. 2010) citing *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1 (1983).

This Court finds no merit in Citi's argument regarding the sufficiency of PPLLC's Miller Act allegations in this suit. As pointed out by PPLLC, its complaint

clearly cites the applicable law at Paragraph 1 and attaches the surety bond as "Exhibit A" to the complaint. As noted by many courts, the only cause of action available to a subcontractor on a surety bond lies within the Miller Act, leaving no question as to the intended cause. *U.S. for Use and Benefit of Canion v. Randall & Blake*, 817 F.2d 1188, 1191 (5th Cir. 1987) (the substance of allegations made in a complaint governs whether Miller Act claims are made, rather than formulaic references to the Miller Act itself).

## **Conclusion**

For the reasons discussed herein, the Court recommends that Citi's motion to compel arbitration be GRANTED as to all breach of contract claims against it by PPLLC but DENIED as to all Miller Act claims by PPLLC in this suit. This Court further recommends that all Miller Act claims should be STAYED pending the outcome of arbitration of all breach of contract claims among the parties. Finally, this Court recommends that Citi's attendant motion to dismiss be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after

being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).

THUS DONE in Chambers, Lafayette, Louisiana on this 10th day of August, 2021.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE